and Rehabilitation of Monroe, LLC, et al., or arguments scheduled to be 15 minutes per side. Mr. Richard A. Patton for the appellant. Thank you, Your Honors. May it please the Court, good morning. My name is Richard Patton. I am here representing the MW Capital Funding  Intervenor Appellant, Misha, US, LLC. And at this time I would like to reserve two minutes for rebuttal, please. Thank you very much. Your Honors, I believe this case can be boiled down to a simple question. Can a court burden a party by order to pay a contractual obligation but then deny that party the opportunity to determine the true and proper scope of that contractual obligation? And I think the answer to that question simply must be, no, it cannot. Well, isn't your remedy at the contractual stage? Your Honor, I believe that is not the case. I'm sorry, I apologize. Well, he just agreed to pay it. He didn't insert any kind of conditions on whether or when he had to pay it. He just said, I'll pay it. Your Honor, respectfully, I believe that the order entered by the lower court said that... No, I'm talking about the contract. Oh, I'm sorry. Well, what the contract states, Your Honor, is that in consideration of the performance of the duties that Benchmark must perform in the contract, that the fee must be paid. So you cannot separate the duty to pay a contractual obligation from the obligation or the performance that gives rise to the right to payment that Benchmark must perform. In other words, if you're going to pay for something, the party on the other side has to do that something. And even the contract in this case states that specifically. It is in consideration for the performance of the duties under the contract. Which contract are you talking about? I'm referring to the Benchmark agreements, Your Honor. And if you would, you can find that in the record at document number 96. And it is paged as one example because there are four contracts which are substantially the same in the language. But if you would look at page ID 2708, paragraph three, management fee, states in consideration of the performance of its duties here under. And then goes on to describe what the fee is. This is a contract between Benchmark and the receiver. Yes, Your Honor. That's correct. The receiver signed off on Benchmark's behavior, correct? That is. I'm not sure that they signed off. What they did was they failed to object to it. Right. So why do you have the right to object under this contract that you're not a party to? Because, Your Honor, what happened in the lower court is that the district court entered its order stating that Misha had to pay the valid accounts in the ordinary course of business. And the dispute, I believe, in this case is over that language. The ordinary course of business language. Now, Misha argued to the district court that the ordinary course of business language meant pursuant to the terms of these Benchmark's agreement. The district court acknowledged that and accepted it. And we believe that now in the briefings to this court, Benchmark has acknowledged and accepted that. Benchmark's only position is to this court that, well, okay, yes, you construe it in terms of the contract between Benchmark and the receiver, but you can't look at all the terms of the contract. You only have to take a narrow view of the one sentence that says, pay me my 5%. And that is completely contrary to contract law in Michigan, which governs these contracts. Contract law in Michigan, and as far as I'm aware in most states, states that you must construe a contract in its entirety, viewing the whole of the contract and all of its terms. So, I'm sorry to be backing up and be confused. That's okay. You are Misha. You are not a party to the Benchmark receiver contract. You are not a third party beneficiary. Are you under Michigan law of that contract? No. So, why do you have a claim under the contract? For a few different reasons, Your Honor. One is because the district court put Misha in the position of the receiver with respect to those contracts. When it said, okay Misha, I'm assigning you, I'm giving you the obligations to pay under the Benchmark agreement. So, the district court put Misha in the shoes of the receiver with respect to those contracts. And that's in the sale order. That's in the sale order. Correct, Your Honor. And even the Benchmark agreements themselves state, and I'll find this, Your Honor, quickly in the record as well, that this is in page ID 2714. It is paragraph 31. The paragraph on binding effect states that this agreement will inure to the benefit of and will be binding upon receiver and manager and their respective successors and permitted assigns. Now, I don't think that there really can be too much of a difference in the way that the district court succeeded to the receiver's position with respect to these contracts when the district court said, you must come in and pay these contractual obligations. So, the court made Misha the successor, made Misha the assigns by putting them in the shoes of the receiver with respect to these payment obligations. And the district court acknowledged that ordinary course of action was due to the terms of the contracts themselves. Again, Benchmark has acknowledged that. Now I think the only question for this court to answer is, can you construe those contracts with view of only a single line in the contract or must the court, the district court and this court, construe those contracts in their entirety? The sale order was in large part heavily negotiated back and forth, but it was entered as an order by the court. And I will acknowledge to this court, I understand I'm fighting somewhat of an uphill battle because I'm asking this bench to look at the lower court, the district court's interpretation of the district court's order and say it meant something different. As Judge Norris mentioned, the district court wasn't involved in the negotiation. The parties had to negotiate some kind of agreement that was the basis on which the order was premised. And that's what he asked, didn't the parties negotiate and agree to the necessary sales order that the district court's order addressed? I'm not sure that they negotiated and agreed to every single term. I think they negotiated and got what terms that they could get as best that they could and the court entered the order. Your Honors, I was not there at that hearing. However, I do know that one procedural quirk here in this case is that this order that was entered in the district court was entered by Judge Bernard Friedman after a long day of hearing and I think conference with the parties, and yet it was interpreted later on by Judge Stee. So I think that there's a little bit of a quirk here that provides some room for this court to say, okay, we understand that the district court interpreted this order this way, however, it's a different judge. And what the parties meant, and I think what was expressed at the hearing where this order was entered, was that they didn't have to pay anybody millions of dollars. They had to be able to come in and to assess the condition of these nursing facilities with their new management company and there's a colloquy between Mr. August and the court and Mr. Shapiro, Benchmark's counsel, where that understanding, that meaning that can be attributed to this ordinary course of business language was discussed. The underlying facts are confusing, but I'm just curious. Did you ever make a proffer in court somewhere on the record that Benchmark didn't perform? Your Honor, yes. I believe that was part of the response, Misha's response to Benchmark's motion. It was argument, and our motion for reconsideration, we also included the declaration of Mr. Michael Tenenbaum, who lays out in great detail at length the evidence for the breaches and the failures under the Benchmark agreements. So in this, you mentioned this decision on reconsideration, which is very terse, two-page order, but there is a statement in this, neither the language of the sale order nor any extrinsic evidence supports Misha's alleged status as an assignee. So you're contesting that that's an incorrect statement by the district court, is that right? Yes, Your Honor. So what's your best point? You gave us a paragraph 31 saying that the receiver and their respective successor, there's binding effect on the receiver and their respective successors in the signs, but I read Judge Stee as saying that there's nothing in the sale order saying that you are an assignee. Your Honor, it is simply by the fact that the order puts Misha in the shoes of the receiver. It is the functionality of the order itself that puts Misha in the position of the obligor of the debt on the contract. And that brings me back, Your Honor, to I think what is the main question in this case. Can a court by its order put a party in a debt obligor position under a contract, but then tell that party, I'm sorry, I'm denying you the opportunity to determine the true and proper scope of the claim under that contract by reference to all of the terms of the contract? You can't go there. It's the court's fault for putting you in a position that you agreed to be put in in a consent order. No, Your Honor, that's not what I'm saying. I'm not saying it's the court's fault for putting me in that position. What I'm saying is I believe the court acted improperly by denying us the opportunity that once we were put in that position to then say, okay, now that we're in the position of paying this contract obligation, we have the right to determine what that true and proper contract obligation is. We have the right to challenge what they're saying the payment is because we say it's not a valid account. At least it's not valid for these reasons. But what the lower court, what the district court did was say, you don't have standing so you don't even get to make those arguments. Did the district court actually use the word standing? I believe the district court did use the word standing in its original order. Original meaning Judge Friedman? I'm sorry, Judge Stee. They may have said that we could not enforce it because we were not a named party or a third party beneficiary. That isn't really a standing argument, is it? I couldn't find the word standing in the district court's opinion and I'm just curious. It seems to me that it's more a failure to state a claim conclusion by the district court that because you're not a party to the contract or you're not a third party beneficiary, you have no claim. So I would think that would be more of a failure to state a claim as opposed to the word standing. If you pointed out to me, obviously you're going to have your bottle, your red light is on now. If there's some place where Judge Stee talks about standing explicitly, I'd like you to point it out. Yes, Your Honor. Thank you. I see that my time is up. Good morning, Your Honors. My name is Tracy Clark and I'm appearing on behalf of Benchmark Healthcare Consultants, LLC. As Your Honors pointed out, the debt incurred in this case was based on a contract. The contract was between the receiver and Benchmark. Benchmark performed for one and a half years without pay. Misha came in and agreed to pay the debt that was owed to Benchmark. It didn't take over the contract, so contract law doesn't apply. It's not a successor to that contract. It's not an assignee to that contract. It simply agreed to pay the debt. It wasn't the court's doing. It was Misha's agreement to the sale. Is there a contract that we're looking at for these purposes? The only reason the contract would be looked at is because of the ordinary course of business language. The ordinary course of business language dictates when payment is due. I'm sorry. Where is the ordinary course of business language found? It's in the sale order. It says that payment would be made in the ordinary course. I'll quote from Misha's brief at docket 31, page 25. The district court correctly acknowledged that paying Benchmark in the ordinary course was dictated by the terms of its management agreements. That's when payment was due, based on the management agreements. The management agreements said payment is due when the sale occurs. The sale occurred. Payment is due. But Benchmark decided it wasn't happy with the performance. Let's say there's a corner market. It's failing. It can't pay its employees. It can't continue operating. But it wants to sell. It knows it's worth more if it continues to operate. It says to its employees, you hang in there with us and keep working. We'll pay you after we sell. Meyer comes in and says, we're going to buy this corner market store. As part of that, we'll pay those employees. It's part of the purchase price, Your Honor. Basically, Meyer comes in and says, we'll pay these employees. The sale closes, and then they say, wait a minute. We don't want to pay those employees. We're not happy with the way they performed. Is that appropriate? No. And Judge Stee understood that. And the reason it's not as appropriate is because Meyer didn't get the agreement between the market and the employees. All it did was say, we'll pay the debt. It's not an automatic assignment just because you've agreed to pay the debt. As we mentioned, the contract was between the receiver and benchmark. We know that the receiver could have said, we're not happy with your performance. And it could have terminated the contract as soon as it was displeased. But what did the receiver say? At the hearing on the motion to compel, the receiver said, I will support the assertion with regard to the receivership contract of management companies. I don't believe they breached. I do believe their services provided were valid. I believe their debt is valid. So the receiver was on board. But Misha wants to say, well, we assume the debt, but somehow automatically I get the right to dispute that debt. Well, they say that they step into the shoes of the receiver. There's absolutely no evidence of them stepping into the shoes of the receiver. There has to be an assignment of those rights. The receiver had the rights. All Misha did was come in and agree to pay the debt. There's not one single case that says if you assume a debt, you automatically get the right to dispute the debt. So if we determine that Misha was assigned the rights and obligations under the management agreement, is it your position that Misha could then, or is it your position that Misha could not then challenge the fee amount under the agreement, if we hypothetically made that determination? If hypothetically you made a determination that there was an assignment that somehow, although there's no evidence of it, there was an assignment, then the right that Misha would have would have been to terminate the contract, that's all the contract allowed, with payment due in 30 days. So that would have limited significantly any damages of any parties in this case. If the receiver was unhappy with any of the work that was done, they say, you're out, we'll pay you what we owe you within 30 days, and we'll get a new management company in. But in this case, they waited a year and a half for performance. Millions of dollars were owed to the management company before Misha stepped in and said, wait a minute, we're not happy with the performance. So hypothetically, if we're just looking at the receiver benchmark contract and not forgetting that Misha even exists, if the receiver is unhappy with Benchmark's performance, the receiver has to terminate the contract, but then pay Benchmark for all of this hypothetically bad performance. Is that right? According to the terms of the contract, the only right under the contract was to terminate the contract with payment due within 30 days. Now I suppose if the receiver had some basis to argue that Benchmark hadn't performed, they may be able to argue that. They could bring maybe a breach of contract action against Benchmark if that... Say Benchmark walked off the job and wasn't performing at all. There's the 30-day termination provision. You'd go to normal contract law principles, right? Breach of contract, et cetera. You would, but then you would look at what the remedies are in the contract, and the sole remedy in the contract was termination of the contract at any time by either party. Misha also claims some kind of suretyship, which I think is just kind of a throw-in argument, because it wasn't argued this morning. Suretyship law is wholly different, and suretyship only comes into play if there's three parties to a contract at the very outset of the contract. In this case, that simply did not happen. Suretyship law just does not apply at all. Misha's main focus in this case is to try to get you to see that if you assume a debt, you automatically get the right to dispute the debt. But as I pointed out in my analogy, all they did was assume the debt. You don't automatically. If the law provided for an automatic assignment of the right to dispute the debt, there would be a single case cited in their brief that says it's automatic, but that doesn't happen. You have to get these rights assigned. They could have put it in that agreement. It was negotiated. It was negotiated at the hearing on the sale. The parties went out and negotiated what they want in that order approving the sale. They could have put in there, we get all the rights to dispute any work performed by the receiver. What is your best case under Michigan law that if you assume a debt, you do not have the right to challenge the debt? I'm going to say there are none, because the issue has never come up. It's never been, no one's ever said it's an automatic assumption of the right to dispute. Are there no cases in Michigan addressing whether if it's not an automatic assumption, it's something that the party assuming a debt can on occasion challenge the debt, but not in this case? It's kind of trying to prove a negative. The other side would have to prove that they would have to have a case that said it is automatic. There are no cases saying it is automatic. You're using the word automatic to change the question that I'm asking. I'm not asking if there's a case saying it's an automatic right. I'm asking if ever somebody assuming the debt has been able to challenge successfully the underlying conditions or amount of the debt. So hypothetically, I could imagine that there's some fraud and that maybe a Michigan court would say, well, normally somebody who assumes a debt can't challenge the validity of the underlying debt, but this fraud here is so bad that we're going to allow this entity to make that challenge. But you're saying there are no cases on that? I'm sorry. I'm not located. In the research that was done in preparation for this, I have not found a case. And I would think that the same thing would go for MSHA. If there was such a case, I'm sure that MSHA would have cited it in their brief. Did you see in the district court's opinion the word standing anywhere? I did not, but that's the way I understood it, that you would only have standing to dispute the performance under the contract if it was assigned to you, or if you were a party to the contract. And that didn't happen here. The reason why I'm raising it is that the Supreme Court has told us not to use the word standing without thinking carefully as to what we really mean and whether it really should be failure to state a claim or some other doctrine. Because under federal principles, I know this is a diversity case, but under federal principles the federal courts have to have jurisdiction and standing as part of the jurisdictional analysis. So what I'm trying to figure out is why isn't this more properly a failure to state a claim, which supports your position entirely. I don't know that it would make a difference. Except for standing, when we say somebody doesn't have standing, we're saying we're not going to consider anything at all. I think the overall case was the receivership case with the diversity jurisdiction. And the standing, as you may have pointed out, the claim was one little piece of that puzzle. The judge did not say the word standing that I could see. Actually, after your Honor brought it up, I went through the opinion really quick again and did not see the word standing, although I don't know, we all assumed it was standing. So I can't say that that's what he was saying. Thank you. Thank you, Your Honors, and I'll be quick as I can here. I reviewed quickly the opinion, Your Honor. I do not see the word standing. What I do see is that the court said on page 5 of his opinion, page ID 3999, Misha has not presented a legal basis for it to contest Benchmark's fee under the management agreements when it is not a party to those agreements and when the receiver, the contracting party, has no objection to Benchmark's fee or its performance. The opinion certainly does not go on to say anything about failure to state a claim either. And that was, I believe, argued, I think standing was argued in the motion for reconsideration. It was argued that way. So to my friend counsel over here to my right, I think that the parties all understood the court's ruling to be a standing ruling and still do. With respect to a few other points, just very quickly, opposing counsel stated that the contract remedies were limited to termination. That is not the sole remedy, Your Honor. In fact, the contracts, again, I'll point you directly to the record, state that the remedies are cumulative. Page ID 2713, paragraph 21, remedies cumulative. The remedies of the manager and receiver here under will be cumulative and no one of them will be construed as exclusive of any other or of any remedy provided by law or an equity. So the remedies are cumulative. Your Honor, the court said ordinary course of business meant the contract terms. Benchmark said ordinary course of business meant the contract terms. You have to look at all the contract terms. We were successors under the agreement. We were successors under the court's order and we would ask that this court reverse the lower court's ruling to prevent Misha from challenging Benchmark's claim. Thank you. Thank you. Thank you both for your argument and the case will be submitted.